## DALY JUDGE MINING CO. v. TOWEY.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1917.)

No. 4568.

1. MASTER AND SERVANT ⬅276(4)—INJURIES TO SERVANT—EVIDENCE—CAUSE OF ACCIDENT.
   In an action for injuries to the operator of an electric mine motor, evidence *held* sufficient to support the jury's finding that the accident was caused by a loose plank in the track over which the motor was run.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

2. MASTER AND SERVANT ⬅297(2)—INJURIES TO SERVANT—SPECIAL FINDINGS INCONSISTENT WITH GENERAL VERDICT.
   In an action for injuries to a mine motorman, caused by a loose plank in the track, special findings that the jury did not know how the plank became loose, or how long it had been loose, are not inconsistent with, nor insufficient to sustain, a general verdict for plaintiff.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1196.]

3. MASTER AND SERVANT ⬅118(1)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—SAFE PLACE TO WORK.
   It is the duty of a mining company to exercise ordinary care to keep the planks placed on the cross-ties between the rails of its track in a reasonably safe condition, so as not to cause an injury to an operator of the motor, and that duty is continuous.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 209.]

4. MASTER AND SERVANT ⬅278(10)—INJURIES TO SERVANT—EVIDENCE—SAFE PLACE TO WORK—EXISTENCE OF DEFECT.
   In an action for injuries to a mine motorman, caused by a loose plank in the track, evidence *held* sufficient to sustain a verdict for plaintiff, notwithstanding testimony by defendant's inspector that he securely nailed the plank to the ties the day before the accident.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 964.]

5. APPEAL AND ERROR ⬅263(5)—PRESENTING QUESTIONS BELOW—EXCEPTIONS—MOTION FOR NEW TRIAL.
   The overruling of a motion for a new trial based on alleged errors in the instructions is not alone sufficient to reverse the judgment, where no exceptions were taken to any of the instructions given.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1521.]

In Error to the District Court of the United States for the District of Utah; Wm. H. Pope, Judge.

Action by Frank Towey against the Daly Judge Mining Company. Judgment for the plaintiff, and defendant brings error. Affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert A. Holland, Jr., of St. Louis, Mo. (William H. King, Joel Nibley, and M. E. Wilson, all of Salt Lake City, Utah, on the brief), for plaintiff in error.

E. C. Weber, of Fort Madison, Iowa (Albert J. Weber and Culbert L. Olson, both of Salt Lake City, Utah, on the brief), for defendant in error.

Before ADAMS, Circuit Judge, and REED and ELLIOTT, District Judges.

REED, District Judge. The defendant in error, who was plaintiff in the District Court, recovered judgment against the Mining Company, defendant in that court, as damages for a personal injury received by him while operating an electric motor upon a track in drawing cars to and from the defendant's mine to its mill. Two alleged grounds of negligence were submitted by the trial court to the jury:

(1) That defendant was negligent in failing to furnish a reasonably safe motor upon which the plaintiff was employed, in that it negligently left in the lower part of the motor an opening through which extraneous objects might pass and cause an injury to the motoneer.

(2) That the defendant was negligent in failing to provide a safe place or track upon which plaintiff was to work upon the occasion in question, in that it permitted a certain plank, laid upon the cross-ties on which the rails were laid, to become loose, with the result that the motor as it passed over the track caught this loose plank and carried or thrust it into the opening in the motor before referred to, where it caught and seriously injured the plaintiff's foot, necessitating its amputation.

At the close of the evidence the defendant moved for a directed verdict upon the ground that the testimony was insufficient to support either of these alleged grounds of negligence. This motion was denied, to which the defendant excepted, and the ruling is assigned as error.

The jury returned a general verdict for the plaintiff in the sum of $5,000. It also answered special interrogatories submitted by the court, which interrogatories and the answers thereto are as follows:

(1) What was the cause of the accident? A. A loose plank.
(1½) Was the motor used a reasonably safe one? A. No.
(2) Was the plank at the time and place of the accident loose? A. Yes.
(3) If so, how did it become loose? A. We do not know.
(4) How long had it been loose? A. We do not know.
(5) Did the witness Jones nail down the plank on February 14, 1912 (the day before the injury to the plaintiff)? A. No.

No objections were made to the submission of the special interrogatories; nor is either of the findings challenged as being inconsistent with the general verdict; nor was there any motion for a judgment upon the special findings because inconsistent with the general verdict; and no exceptions were taken to any of the instructions given by the court to the jury.

[1] The first assignment of error, based upon the denial of the motion to direct the verdict, is: (1) That the testimony is wholly insuffi-

cient to support the finding that the accident was caused by a loose plank in the track over which the motor was run, which caused the accident and resulting injury to the plaintiff. There is ample evidence to support this finding of the jury. It is true that defendant's track inspector, Jones, testified that he was frequently over the track in question, and was over it the day before the accident, and observed that the plank was then loose, and that he nailed it down firmly to the ties upon which the rails were laid; while one and perhaps two witnesses in behalf of the plaintiff testified that there was a loose plank in the track at the place where the accident occurred, and one of them testified that a loose plank had been there for some 10 days or more prior to the accident, that he could not definitely locate the same, but that it was in the vicinity of or close to the place in the track where the accident occurred.

[2] The finding of the jury that there was a loose plank at the time and place of the accident, and that the plank was the cause of the accident and injury to the plaintiff, is conclusive upon this question. The answer to the third interrogatory that the jury did not know how the plank became loose, and to the fourth that they did not know how long it had been loose, is not inconsistent with, nor insufficient to sustain, the general verdict. Whether or not the answer to interrogatory 1½ is sustained by the testimony is quite immaterial, for the finding that the accident was the result of a loose plank, which existed at the time of and shortly before the accident, is sufficient to sustain the verdict without the answer to this interrogatory.

[3, 4] The contention of the defendant is that there is not sufficient evidence to sustain the finding that a loose plank existed for such time before the accident that the defendant should have known of its existence. But it was the duty of the defendant to exercise ordinary care to keep the planks, which were placed upon the cross-ties between the rails, in a reasonably safe condition so as not to cause an accident to the motor (though that may have been in a reasonably safe condition) resulting in an injury to the plaintiff. This duty was continuous, and there was testimony by plaintiff's witnesses Archer and Nelson that a loose plank or planks existed in this track for some ten days, two weeks or more before the accident. Defendant's track inspector, Jones, testified that he went over the track the day preceding the accident; that he went over the track about ten times that day, which was February 14th, and said:

"I was on duty, and I did something with this plank. The planks were about 10 inches wide and about 10 feet long; 3 inches thick. I cleaned up some of the planks that were along the track there, and throwed them out of the window at this particular place, and I nailed that one down. There is ties there; that is part of the trestle, and the ties goes across the trestle, and I nailed the plank to the ties. We have single jack hammers about four pounds, and drive two nails on each end of the plank, and sometimes one in the center. On this occasion I used a 40 penny nail. I have got one in my pocket; that is the kind of nail I used. After I left that plank after driving these nails in, the plank was in good shape and it was fast to the ties. In driving these nails I met the ordinary and usual resistance that one meets in driving in good sound wood. It was after dinner on the 14th that I fastened that plank in the manner described, and by that I mean that it was along

about 1 or 2 or 3 o'clock, along in the afternoon. I passed over it on the 15th, the day of the accident. Those cars operated over the same place on the day of the 15th, all day long in the regular way, and I did not notice anything wrong with the plank with reference to its being loose or anything out of the ordinary. I gave to that plank and the track as I passed over it the usual attention that I gave it, and I discovered nothing out of the ordinary. I recall the last trip that we made on the 15th over that plank, and I recall noticing that plank, it was somewhere pretty close to 4 o'clock. Its condition then was good. It was fastened to the ties about 4 o'clock on the 15th; that was the last time I saw the plank before the accident (which was shortly after 6 o'clock on the evening of the 15th). The next morning I saw the plank in the condition in which I have described (that is, that it was badly injured, split in two, and was in the condition described by other witnesses)."

That the plank was loose on the day of the 14th is conclusively settled by the testimony of the track inspector, Jones, and by the finding of the jury. If it was loose upon that day when the track inspector passed over it, and it had been loose for some days prior thereto, as testified by the witnesses Archer and Nelson, the jury might well find that Jones did not nail the plank down as he testified that he did.

There are some other assignments of error, based upon rulings on objections to the testimony. We have examined these rulings, and find no reversible error in them.

[5] The defendant filed a motion for a new trial after judgment, in which it alleged that the court erred in some of its instructions to the jury, and assigns error in overruling that motion; but the overruling of the motion for new trial is not alone sufficient to reverse the judgment.

The judgment is affirmed.

The late Judge ADAMS heard the argument of this case, participated in its decision, and concurred in the result as announced in the foregoing opinion.